# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

EARL E. HIGHTOWER, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-17-271-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
       Defendant. )

**OPINION AND ORDER**

Plaintiff Earl E. Hightower (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 45 years old at the time of the ALJ's decision. Claimant obtained his high school education and graduated from a police academy. Claimant has worked in the past as a police officer, chief of police, and ditch hand. Claimant alleges an inability to work beginning December 12, 2012 due to limitations resulting from anxiety, mental problems, and panic attacks that result in fainting.

### Procedural History

On October 23, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  On October 24, 2013, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  On May 24, 2016, Administrative Law Judge ("ALJ") John Belcher conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma.  On July 27, 2016, the ALJ entered an unfavorable decision.  The Appeals Council denied review on May 25, 2017.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with non-exertional limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to perform a proper credibility analysis; and (2) failing to include

4

all of Claimant's severe impairments and their limitations in the RFC.

## Credibility Determination

In his decision, the ALJ found Claimant suffered from the severe impairments of disorders of the nervous system, hypertension, depression, and anxiety. (Tr. 56). The ALJ determined Claimant retained the RFC to perform a full range of work at all exertional levels. However, the ALJ included non-exertional limitations in the RFC. Specifically, the ALJ found Claimant could occasionally balance but cannot climb ladders, ropes, or scaffolding, should avoid hazardous or fast machinery, unprotected heights, driving, and pools of water as a part of his job duties. Claimant was limited to simple and routine tasks and some complex tasks allowing semiskilled work. Claimant could only have superficial contact with co-workers and supervisors. The ALJ found Claimant could have no close proximity to co-workers, should not have any more than ten co-workers with whom he actually has to work, and no public contact. (Tr. 59).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of janitor, laundry worker, electrical assembler, and document scanner, all of which the ALJ concluded existed in sufficient numbers in both the regional and

5

national economies. (Tr. 68-69). As a result, the ALJ concluded that Claimant was not under a disability from December 12, 2012 through the date of the decision. (Tr. 69).

Claimant contends the ALJ failed to properly evaluate his credibility. Claimant's objection to the credibility analysis is overly general and somewhat misleading. He correctly indicates that the ALJ employed the oft-used phrase that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision" - a virtually meaningless phrase not looked upon with favor. However, Claimant ignores the substantive portion of the ALJ's credibility analysis which follows this statement. The ALJ noted Claimant's complaints of vasovagal problems but also recognized Claimant was not compliant with his medication regimen, resulting in a low valporic acid reading in lab testing. The ALJ found his claims of non-compliance because it was difficult to make appointments unavailing since the lab results demonstrated he did not take his medication even when it was available. (Tr. 66). He also found Claimant's earnings record revealed he had not worked or had limited work years prior to his onset date. Id.

The ALJ also noted the contradictory medical findings that belied his complaints of anxiety and depression. He also noted the gaps in Claimant's medical treatment which would not be consistent

6

with severe impairment. (Tr. 66).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, *3.

The ALJ affirmatively linked his findings on Claimant's

7

reduced credibility to the objective medical record in considerable detail and with persuasion. The ALJ's findings are supported by substantial evidence.

**RFC Determination**

Claimant challenges the ALJ's RFC determination. In so doing, he asserts several varied bases for alleged error. Claimant contends the ALJ should have found his syncope to be a severe impairment and include limitations derived from the condition in the RFC.

Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

8

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. Moreover, he considered Claimant's syncope in the evaluation of the subsequent steps. (Tr. 57, 66). Since he did not deny benefits at step two based upon the lack of any severe impairments, the ALJ's failure to include the syncope condition as a severe impairment at step two

does not constitute reversible error.

The ALJ found the vasovagal syncope claimed by Claimant to be medically determinable, finding no medical evidence to show the condition was diagnosed or that Claimant had participated in ongoing treatment. He concluded Claimant's condition was only diagnosed by history - a notation perpetuated in the record. (Tr. 57). Claimant indicates that he went to the Sequoyah Memorial Hospital on September 2, 2012 with a complaint of unwitnessed syncope, having lost consciousness. (Tr. 516). He underwent a CT scan of his brain which was entirely normal. (Tr. 524-25). After this time, the diagnosis of syncope was reported "by history" by Claimant to the medical providers he saw after this single visit. (Tr. 517, 569). No independent medical diagnosis of syncope appears in the record. The medical record supporting a diagnosis of syncope which Claimant described as "sparse" in the briefing is, in fact, non-existent. Indeed, Claimant's condition was characterized as "seizures" in subsequent records of the Sequoyah Memorial Hospital. (Tr. 575).

Claimant associated the condition with panic attacks in his testimony. (Tr. 88). The ALJ did find that disorders of the nervous system and anxiety were severe impairments and accounted for the restrictions arising from them in the RFC. (Tr. 56, 59).

"[R]esidual functional capacity consists of those activities

10

that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence. This Court finds no error in the failure to include limitations associated with syncope in the RFC.

Claimant also asserts the ALJ's RFC was "vague" in the terminology employed. While it is true that the vocational expert found the RFC to be unusual, he did not testify that the limitation

11

in the number and proximity of co-workers would preclude employment. (Tr. 98-99). He identified jobs which Claimant could perform. As such is the case, the ALJ's RFC is sufficiently clear to stand.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 25th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE